## SCHOOLEY v. THORNE.

A justice by consent of parties may enter a rule of reference, and the judgment on the award shall bind them. The act under which justices of the peace at that time acted, gave no express power to refer causes. A justice's court is a court of record.

*Certiorari* to Justice Anderson.

The matters in controversy between the parties in this action had been referred by the justice, with the consent of the parties. The referees reported, and the justice gave judgment upon the award.

*Leake* for the plaintiff. — This judgment is erroneous, because the justice had no authority to refer the matter and to enter judgment on the award. The authority of a justice of the peace to hear and decide causes is given by act of assembly, creating a new and inferior jurisdiction, and therefore this court should take care that these tribunals do not overstep their powers. The act of assembly (*Allinson* 469) directs the justice to hear personally—to enter judgment by default, or on a verdict. There is no provision about arbitrators or reference—he is therefore restrained from proceeding in any other manner. *Pierce* v. *Hopper,* 1 *Str.* 249; *Rex* v. *Loxdale,* 3 *Burns' Just.* 311; 3 *Bl. Com..* 71, 81, 85.

Here the justice delegates to others those judicial powers which had been reposed specially in him, which is contrary to every principle of law. *The Queen* v. *Glin,* 6 *Mod.* 87. The award is to be considered as a judgment, and the referees have exercised judicial powers—nor is this exception removed by the consent of parties. Consent may cure many defects, but it cannot give jurisdiction to a court that has none. *Rex* v. *Hartshorne,* 2 *Burr.* 745.

[72] There are other objections which should induce the court to deny this power to the justices of the peace. The authority to refer a case necessarily implies powers to carry the award into effect. If the justice can refer a cause, he must be authorized to inquire into the behavior of referees, to examine the legality of their proceedings, to issue attachments to compel their performance, because these powers are necessarily connected with that of referring a cause, and are those through which the inconveniences of arbitrations are either guarded against or remedied.

The legislature, in instituting these inferior tribunals, had it in view to accommodate the citizens, and to furnish them

with the means of speedily arriving at justice. It has become apparent, however, that the sources of litigation have been increased, by multiplying the facilities of gratifying it. To give justices authority to refer causes, and to invest them with the powers to give efficacy to it, will be to increase these evils and to multiply the inconveniences. It must be done by a legislative act.

KINSEY, C. J., delivered the opinion of the court.

The question before the court is stated improperly; it is not whether the justice can or cannot refer a cause, but whether the *parties* may not do it, and the justice enter on his record a memorandum of their consent, and give judgment according to the award to which they have voluntarily submitted.

All the arguments that have been urged apply to the question as first stated, and are equally applicable to all courts, whether of extended or limited jurisdiction. None of them have any authority to compel the parties to submit their controversies to the decision of arbitrators. Neither do the cases with regard to limited jurisdictions oppose this course. There is no doubt in this case of the jurisdiction of the justice, and of his right to pronounce judgment; the objection goes only to the course of proceeding, and as that was selected by the parties themselves, they should not be permitted to question it. The justice has not delegated his judicial authority. The parties themselves withdraw from him the [73] investigation of the facts; but the judgment is his own, and pronounced upon an award to which they must be considered as consenting.

The course pursued in this case is agreeable to the custom of the country, and that is a material circumstance to be considered. Judgments of this kind have been repeatedly given, and no objection was ever taken to them before.

Inferior courts of this description calculated to administer justice at a less expense, and in a speedier manner than the

usual mode of proceeding in courts of common law will admit, appear to me to be highly necessary, and, if properly regulated, must be beneficial to the community.

Were we to examine their proceedings by the strict rules of law, and to overturn their judgments for all defects or omissions in matters of mere form, it would deprive these courts of all their beneficial qualities; it would be extremely prejudicial and burthensome to the people, and it would not promote that justice which could alone authorize such critical examinations. While, therefore, the justice confines himself within the line of his authority—I mean substantially, and not formally—the good of the community requires that his proceedings should be supported by every reasonable construction in their favor.

The act of assembly which institutes these courts for the trial of small causes, in the first section, consists of two parts. It makes all actions of debt or other demands (except certain species of action particularly specified) cognizable before a justice; and, secondly, it points out the manner in which they are to exercise this jurisdiction. The section embraces distinct objects. The first—that is, the power or jurisdiction given—is the substance, and must not be exceeded; the second—that is, the mode of execution—is formal and directory; and this part of the law should be more liberally expounded.

This distinction between the essential and the formal circumstances of a case was recognized by Lord Mansfield, (1 *Burr.* 447, in *Rex* v. *Loxdale*,) and the case of *Rex* v. *Sparrow*, 2 *Str.* 1123, is cited by him as confirming this idea.

[74] So by the statute 27 *Eliz.*, the party robbed, in order to recover against the hundred, is directed to go before some justice of the county, living within the county, or near the same, and make an affidavit; yet a person going before a magistrate twenty miles off, though many justices nearer, was held to have complied with the act, because this part of

Schooley v. Thorne.

it was merely directory, the substance being the making of the affidavit. (a)

These authorities are sufficient to show what I consider as clear law, that the substance of a statute, in what respects the subject of jurisdiction, is one thing; the mode of execution, another. The first cannot, and ought not to be exceeded, but it is not necessary to adhere so scrupulously to the latter.

Every party has clearly a right to agree to submit his cause to other judges than those the law has appointed for him. The utility of these amicable references has been perceived and encouraged by the legislature, but it is a common law right, which grew into notice under the encouragement of the courts.

The case cited, where, by consent, a jury of six men decided, is not applicable. It was a case of jury, and the law requires a justice to summon a jury of *twelve* men. The court there very properly declared that consent could not authorize (a trial by) a *jury* of six men.

A number of cases might be referred to in support of this opinion; one, however, will be sufficient. It is *The King* v. *Gage;* (b) that was a conviction on a penal statute. The defendant was convicted on the 5 *Ann, c.* 14, for using a greyhound in killing hares. Reeve excepted to this conviction, because the statute gave justices jurisdiction to convict upon the oath of one or more credible witnesses, whereas, this was upon defendant's own confession, which, he insisted, the justices had no power to take. The court, however, affirmed the conviction.

Let the judgment be affirmed.

(a) It is presumed the Chief Justice referred to the case of *Lake* v. *H, of Corydon, Bull. N. P.* 186.

(b) See this case reported in 1 *Str.* 546; 8 *Mod.* 63; 2 *Burns' J.* 333.